# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **CHRISTOPHER HEARN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 4:15-CV-2001-MHH |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Pursuant to 42 U.S.C. § 1383(c), plaintiff Christopher Hearn seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Mr. Hearn's claim for supplemental security income. For the reasons stated below, the Court remands this matter for further proceedings.[1]

## **I.  PROCEDURAL HISTORY**

Mr. Hearn filed his first application for supplemental security income on December 1, 2008. (Doc. 7-3, p. 22). The Commissioner denied the application

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

on February 25, 2009. (Doc. 7-3, p. 22). Mr. Hearn requested a hearing before an administrative law judge, and the ALJ issued an unfavorable decision on January 24, 2011. (Doc. 7-3, p. 22). The Appeals Council declined Mr. Hearn's request for review on September 18, 2012. (Doc. 7-3, p. 22).

Mr. Hearn appealed the Commissioner's decision to federal district court on November 16, 2012. (Doc. 1 in Case 4:12-cv-03892-AKK).[2] The district court affirmed the Commissioner's decision on September 26, 2014. (Doc. 15 in Case 4:12-cv-03892-AKK; Doc. 16 in Case 4:12-cv-03892-AKK). On November 19, 2014, Mr. Hearn appealed the district court's decision to the Eleventh Circuit Court of Appeals. (Doc. 17 in Case 4:12-cv-03892-AKK). On July 31, 2015, the Eleventh Circuit issued a decision affirming the Commissioner's denial of Mr. Hearn's claim. *See Hearn v. Comm'r of Soc. Sec. Admin.*, 619 Fed. Appx. 892 (11th Cir. 2015). In this opinion, the Court refers to proceedings associated with Mr. Hearn's December 1, 2008 application as *Hearn I*.

---

[2] The record for Mr. Hearn's first social security appeal is available on CM/ECF, the Court's electronic filing system. The Court takes judicial notice of that record. *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (district court properly took judicial notice of documents related to the plaintiff's previous civil action because the documents "were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (quoting Fed. R. Evid. 201(b); other internal citations omitted). The Court cites to district court entries from Mr. Hearn's first social security appeal by document and case number.

Mr. Hearn protectively filed a second application for supplemental security income on September 26, 2012. (Doc. 7-4, p. 13; Doc. 7-7, p. 2).[3] Mr. Hearn completed his second application on October 1, 2012. (Doc. 7-6, pp. 2-7). The Court will refer to proceedings associated with Mr. Hearn's October 1, 2012 application as *Hearn II*. In *Hearn II*, Mr. Hearn alleges that his disability began on September 26, 2012, eight days after the Appeals Council declined review in *Hearn I*. (Doc. 7-6, p. 2; *see* Doc. 7-3, p. 22). The Commissioner initially denied Mr. Hearn's second application on November 30, 2012. (Doc. 7-5, p. 2). Mr. Hearn requested a hearing before an ALJ. (Doc. 7-5, p. 9). The ALJ issued an unfavorable decision on April 9, 2014. (Doc. 7-3, p. 19). On September 10, 2015, the Appeals Council declined Mr. Hearn's request for review (Doc. 7-3, p. 2), making the Commissioner's decision in *Hearn II* final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 1383(c).

## II.  STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close

---

[3] If a claimant meets certain criteria, a claimant protectively files for benefits on the date that he provides a written or oral statement to the Social Security Administration of his intent to file an application for benefits. *See* https://secure.ssa.gov/poms.nsf/lnx/0200204010 (last visited September 20, 2017).

scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r of Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has established that he is disabled, the ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Mr. Hearn has not engaged in substantial gainful activity since September 26, 2012, the alleged onset date. (Doc. 7-3, p. 24). The ALJ determined that Mr. Hearn suffers from the following medically determinable impairments: hypertension, hyperlipidemia, and coronary artery disease. (Doc. 7-3, p. 24). Although Mr. Hearn claimed that he was disabled because of bipolar disorder, seizures, and schizophrenia (Doc. 7-3, p. 25), the ALJ found that there was no finding "from any acceptable source to support [Mr. Hearn's] allegations of bipolar disorder, seizures, or schizophrenia from September 26, 2012, through the date of this decision." (Doc. 7-3, pp. 26-27). Therefore, the ALJ concluded that those "alleged impairments are not medically determined impairments." (Doc. 7-3, p. 27).

Based on a review of the limited medical evidence post-dating September 26, 2012, the ALJ concluded that Mr. Hearn does not have a severe impairment or combination of impairments. (Doc. 7-3, p. 24). Therefore, the ALJ found that Mr. Hearn is not disabled within the meaning of the Social Security Act. (Doc. 7-3, pp. 27-28); *see* 20 C.F.R. § 404.1520(c) ("You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are therefore, not disabled. We will not consider your age, education, and work experience.").

## IV. ANALYSIS

Mr. Hearn contends that he is entitled to relief because the ALJ failed to consider evidence in the administrative record that pre-dates the September 26, 2012 protective filing date. The Court agrees.[4]

To prove that he was disabled because of bipolar disorder, seizures, and schizophrenia, Mr. Hearn placed in the administrative record a June 11, 2012 psychological evaluation from Dr. David Wilson and a mental health source statement that Dr. Wilson completed on June 19, 2012. (Doc. 9, pp. 23-25; Doc. 12, pp. 1-3). With regard to that evidence and all of the other medical evidence in

---

[4] Mr. Hearn also asks the Court to remand the case so that the ALJ may reassess Mr. Hearn's subjective complaints of pain consistent with Social Security Ruling 16-3p. (Doc. 17). Because the Court will remand this action so that the ALJ may consider all relevant evidence, the Court does not address the merits of Mr. Hearn's arguments concerning Social Security Ruling 16-3p.

the administrative record that pre-dated September 26, 2012, the ALJ stated that he "only ha[d] the power to make a decision from the current filing date through the date of this decision. Much of the evidence in the present claim relates to the pending Federal District Court review and cannot be considered in this decision." (Doc. 7-3, p. 26).

This statement in the ALJ's April 9, 2014 decision is consistent with comments that the ALJ made during the administrative hearing. During the administrative hearing, the ALJ told Mr. Hearn's attorney that he would "evaluate [*Hearn II*] based on the evidence from the filing date [September 26, 2012] forward, and that's really all I have the power to do. The rest of th[e evidence] is . . . in the court process, and it's out of my jurisdiction and out of power to resolve." (Doc. 7-3, p. 39). The ALJ reiterated that he had "no power or jurisdiction to cover that [pre-September 2012] period of time." (Doc. 7-3, p. 39). The ALJ stated that a July 13, 2011 psychological evaluation from consultative examiner Dr. Jack Bentley "was considered in the pending court case." (Doc. 7-3, pp. 37-38). The ALJ also stated that certain medical records from Marshall Medical Center South were "considered in the previous decision." (Doc. 7-3, p. 38).

After the hearing, counsel for Mr. Hearn wrote the ALJ to object to the ALJ's statements concerning the records that the ALJ believed were part of the record in *Hearn I*. Counsel explained that the Appeals Council did not accept the

7

records, and neither the ALJ nor the Appeals Council considered the records in *Hearn I*. (Doc. 7-7, p. 67).

On the court transcript index for the records in *Hearn II*, a "prior folder" or "prior file" notation accompanies Dr. Bentley's report and some of the treatment records from Marshall Medical Center South. (Doc. 7-2, pp. 1-2).

A comparison of the administrative record in this case and the administrative record in *Hearn I* reveals that the ALJ was mistaken; the evidence that is part of the administrative record in *Hearn II* was not part of the administrative record in *Hearn I*. (*Compare* Doc. 7-2, pp. 1-2 in Case 4:15-cv-02001-MHH *with* Doc. 6-2, pp. 1-3 in Case 4:12-cv-03892-AKK). The Bentley report and the Marshall Medical Center records do not appear in *Hearn I*. There are several medical records in *Hearn II* that Mr. Hearn submitted to the Appeals Council in *Hearn I*. Those records include:

- Treatment notes from visits with Dr. Fernandez on May 12, 2011 and November 14, 2011 (*compare* Doc. 7-8, pp. 52-56 in Case 4:15-cv-02001-MHH *with* Doc. 6-3, p. 3 in Case 4:12-cv-03892-AKK);

- Treatment notes from Marshall Medical Center South dated April 25, 2011 through April 27, 2011 and May 2, 2012 (*compare* Doc. 7-8, pp. 9-40 and Doc. 7-11, pp. 31-34 in Case 4:15-cv-02001-MHH *with* Doc. 6-3, p. 3 in Case 4:12-cv-03892-AKK);

- Treatment notes from an emergency room visit at Gadsden Regional Medical Center on August 14, 2011 (*compare* Doc. 7-11, pp. 2-17 in Case 4:15-cv-02001-MHH *with* Doc. 6-3, p. 3 in Case 4:12-cv-03892-AKK);

8

- Dr. Wilson's June 11, 2012 psychological evaluation (*compare* Doc. 7-11, pp. 18-24 in Case 4:15-cv-02001-MHH *with* Doc. 6-3, p. 3 in Case 4:12-cv-03892-AKK); and

- Dr. Wilson's June 19, 2012 mental health source statement (*compare* Doc. 7-11, pp. 25-26 in Case 4:15-cv-02001-MHH *with* Doc. 6-3, p. 3 in Case 4:12-cv-03892-AKK).[5]

In *Hearn I*, the Appeals Council stated that it looked at these records, but it did not make these records part of the administrative record in *Hearn I*. The Appeals Council found that the ALJ's decision in *Hearn I* was dated January 24, 2011, and the records that Mr. Hearn offered to the Appeals Council were "about a later time," so that the records did not "affect the decision about whether [Mr. Hearn was] disabled beginning on or before January 24, 2011." (Doc. 6-3, p. 3 in Case 4:12-cv-03892-AKK). The district court ultimately affirmed the Appeals Council's finding. *See* p. 2, above.

In its September 18, 2012 notice declining review in *Hearn I*, the Appeals Council advised Mr. Hearn that if he wanted the Social Security Administration to consider whether he was disabled beginning on or after January 24, 2011, then he should file a new application. (Doc. 6-3, p. 3 in Case 4:12-cv-03892-AKK). The Appeals Council instructed Mr. Hearn: "[i]f you file a new claim for supplemental

---

[5] In *Hearn I*, Mr. Hearn also submitted to the Appeals Council treatment notes from Huntsville Hospital dated January 11, 2012 and treatment notes from Marshall Medical Center South dated March 22, 2011 and January 4, 2012. Unlike the other new evidence that Mr. Hearn submitted to the Appeals Council in *Hearn I*, this medical evidence is not part of the administrative record in *Hearn II*.

security income within 60 days after you receive this letter, we can use March 22, 2011, the date of your request for review, as the date of your new claim." (Doc. 6-3, p. 3). Consistent with this instruction, Mr. Hearn protectively filed a new application on September 26, 2012, eight days after the Appeals Council declined review.

The Commissioner maintains that the "relevant time period is the month in which [Mr. Hearn] filed his [supplemental security income] application (September 2012) through the date of the ALJ's decision." (Doc. 10, p. 5) (citing 20 C.F.R. § 416.501 and *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). In her brief, the Commissioner does not mention the Appeals Council's indication in *Hearn I* that March 22, 2011 should serve as the date of Mr. Hearn's new claim for supplemental security income because Mr. Hearn filed a new application for benefits within 60 days of the Appeals Council's September 18, 2012 notice.[6]

Assuming without finding that the date of Mr. Hearn's claim in *Hearn II* is September 26, 2012, the ALJ erred in concluding that he could not consider a medical opinion or medical records that predate an application date (or protective filing date). The applicable regulations require an ALJ to "consider all evidence in

---

[6] If March 22, 2011 should serve as the date of Mr. Hearn's new claim for supplemental security income, then none of the psychological evaluations in the administrative record predate the application date.

[a claimant's] case record when [he] make[s] a determination or decision whether [a claimant] is disabled." 20 C.F.R. § 416.920(a)(3); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (the ALJ "must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts" and "consider the evidence as a whole.").

Citing a decision from the Ninth Circuit Court of Appeals, the Commissioner argues that the ALJ was not required to consider Dr. Wilson's June 2012 reports because "'[m]edical opinions that predate the alleged onset of disability are of limited relevance.'" (Doc. 10, p. 10) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)).[7] Nevertheless, opinion evidence that predates an alleged onset date may be relevant to a determination of disability. *See Douglas v. Comm'r of Soc. Sec.*, 486 Fed. Appx. 72, 75 (11th Cir. 2012) (explaining that an ALJ considered evidence from before and after the alleged onset date "that would have bearing on [the claimant's] disability during the relevant time" in reaching his decision that the claimant was not disabled").

In addition, even if medical records or opinions in the administrative record in *Hearn II* also were part of the administrative record in *Hearn I* (they were not),

---

[7] In *Carmickle*, the Ninth Circuit found that an ALJ did not err in giving little weight to an examining physician's opinion because it pre-dated the alleged onset date and was based on an examination during a time when the claimant was working two jobs and had not yet experienced an allegedly disabling injury. *Carmickle*, 533 F.3d at 1165.

that would not preclude the ALJ from considering those documents in *Hearn II*. When evaluating a pending claim for benefits, an ALJ may consider evidence that was part of the administrative record for a prior application without reopening the prior decision and running afoul of the concept of administrative res judicata. *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996). "Administrative res judicata applies when the agency has made a 'previous determination or decision . . . about [a claimant's] rights on the same facts and the same issue or issues, and this previous determination or decision [had] become final by either administrative or judicial action.'" *McKinzie v. Comm'r of Soc. Sec.*, 362 Fed. Appx. 71, 73 (11th Cir. 2010) (quoting 20 C.F.R. § 404.957(c)(1)). An ALJ may use evidence contained in a prior administrative record to identify "preliminary facts required to assess rationally the question at issue, *i.e.,* whether [the claimant] was disabled at the time of the second application." *Rohrich v. Bowen*, 796 F.2d 1030, 1031 (8th Cir. 1986) (stating that ALJ properly summarized medical examinations from 1978, 1979, and 1980 relating to prior application for benefits for purposes of evaluating 1982 application for benefits) (cited with approval in *Wolfe*).[8] An ALJ

---

[8] *See also Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n. 15 (10th Cir. 2004) ("While these medical reports date from an earlier adjudicated period, they are nonetheless part of Mr. Hamlin's case record, and should have been considered by the ALJ."); *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 414 (6th Cir. 2006) ("We do not endorse the position that all evidence or medical records predating the alleged date of the onset of disability, or evidence submitted in support of an earlier proceeding, are necessarily irrelevant or automatically barred from consideration by *res judicata.* We recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated *in combination with later evidence,* may help

crosses the line and reopens a prior administrative decision when the ALJ evaluates the merits of the prior disability determination. *Wolfe*, 86 F.3d at 1079.[9]

Because none of the psychological records that were part of the administrative record in *Hearn II* were part of the administrative record in *Hearn I*, the ALJ, at a minimum, should have examined Dr. Wilson's June 11, 2012 report and assigned a weight to that report. Dr. Wilson diagnosed Mr. Hearn with mood disorder, borderline intelligence, personality disorder, seizure disorder with side effects from medication, and cardiac problems. (Doc. 7-11, p. 24). Dr. Wilson noted that Mr. Hearn had inadequate access to necessary medical or psychiatric care. (Doc. 7-11, p. 24). On June 19, 2012, Dr. Wilson also completed a mental health source statement on behalf of Mr. Hearn. (Doc. 7-11, pp. 25-26).[10]

---

establish disability.") (emphasis in *DeBoard*). An ALJ also may examine evidence from a prior administrative record to determine the res judicata effect of the evidence with respect to the latter, pending application. *Wolfe*, 86 F.3d at 1078-79. Here, the ALJ would not be able to evaluate conclusively the res judicata effect of evidence that appeared in both administrative records until the Eleventh Circuit affirmed the Appeals Council's decision in *Hearn I* to disregard the additional records that Mr. Hearn presented to the Appeals Council in *Hearn I*.

[9] Dictum from an unpublished Eleventh Circuit opinion indicates that an ALJ is not required to consider evidence that was part of the administrative record for a previous disability application. *Luckey v. Astrue*, 331 Fed. Appx. 634, 640 n. 1 (11th Cir. 2007) ("We recognize the force of the argument that the ALJ was not required to consider [Dr.] Oatley's diagnoses because they pertained only to Luckey's previous disability application.").

[10] Dr. Wilson opined that Mr. Hearn has a mild degree of limitation in the ability to remember locations and work-like procedures; the ability to understand and remember very short and simple instructions; the ability to carry out very short and simple instructions; the ability to make simple work-related decisions; and the ability to ask simple questions or request assistance. (Doc. 7-11, p. 25). Dr. Wilson found that Mr. Hearn has a moderate degree of limitation in the ability to travel in unfamiliar places or use public transportation. (Doc. 7-11, p. 26). Dr. Wilson also opined that Mr. Hearn has a marked degree of limitation in the ability to understand and

Dr. Wilson's opinion is inconsistent with the November 29, 2012 opinion of state agency psychological consultant, Dr. Robert Estock – an opinion to which the ALJ assigned great weight. Dr. Estock reviewed treatment records from Mr. Hearn's visits with his treating cardiologist. Those treatment records are dated April 2, 2012; October 30, 2012; and November 5, 2012. Dr. Estock noted that he did not receive psychological records that contained diagnoses of schizophrenia or bi-polar disorder, but he stated that even if Mr. Hearn had these diagnoses, Mr. Hearn's generalized anxiety disorder was not severe based on exams by Mr. Hearn's cardiologist where Mr. Hearn had full orientation, normal mood and effect, and no depression, anxiety, or agitation. (Doc. 7-4, p. 6). Dr. Estock concluded that Mr. Hearn's anxiety caused mild restrictions in activities of daily living and no restrictions in social functioning or maintaining concentration, persistence, or pace. (Doc. 7-4, p. 7). The ALJ gave "great weight" to Dr. Estock's opinion in part because the opinion was based on examinations that

---

remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to respond appropriately to changes in the work setting; the ability to be aware of normal hazards and take appropriate precautions; and the ability to set realistic goals or make plans independently of others. (Doc. 7-11, pp. 25-26).

"showed that [Mr. Hearn] did not exhibit any symptoms of a severe mental impairment." (Doc. 7-3, p. 27).

Mr. Hearn argues that the ALJ improperly relied on Dr. Estock's opinion because "'[t]he opinions of non-examining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." (Doc. 9, p. 12) (quoting *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)). Under the circumstances of this case, the Court cannot determine whether substantial evidence supports the ALJ's decision to give great weight to Dr. Estock's opinion because the ALJ did not examine other relevant evidence concerning Mr. Hearn's mental status. *See Himes v. Comm'r of Soc. Sec.*, 585 Fed. Appx. 758, 766 (11th Cir. 2014) ("[T]he ALJ's error in only assigning weight to Dr. Levassur's opinion is compounded because he was a nonexamining physician, as opposed to Dr. Brown and Dr. DiGeronimo, who were examining physician.").

Moreover, because Dr. Wilson's opinion does not support the ALJ's conclusion, the Court cannot conclude the ALJ's failure to evaluate Dr. Wilson's opinion is harmless error. The ALJ must weigh the evidence. *Nyberg v. Comm'r of Soc. Sec.*, 179 Fed. Appx. 589, 592 (11th Cir. 2006); *compare Wright v. Barnhart*, 153 Fed. Appx. 678, 684 (11th Cir. 2005) ("Although the ALJ did not explicitly state what weight he afforded the opinions of [various physicians], none

of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless.").

## V. CONCLUSION

For the reasons discussed above, the Court remands this case to the Commissioner for an evaluation of Mr. Hearn's application for benefits in light of the entire administrative record in *Hearn II*. The Court asks the ALJ to please consider the application date in light of the Appeals Council's instructions to Mr. Hearn in *Hearn I*. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 30, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE